IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.
05 JUL 21 PM 3:57
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| MILLICENT P. HOLLINS, | ) |
| Plaintiff, | ) |
| v. | ) No. 04-2805 Ml/P |
| METHODIST HEALTHCARE, INC. d/b/a METHODIST UNIVERSITY HOSPITAL, | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed January 3, 2005. Plaintiff responded in opposition on February 22, 2005. For the following reasons, Defendant's motion is GRANTED and Plaintiff's case is DISMISSED.

The instant case arises out of the termination of Plaintiff Millicent P. Hollins's employment as a resident in the Clinical Pastoral Education ("CPE") program administered by Defendant Methodist Healthcare Inc. d/b/a Methodist University Hospital. Plaintiff contends that her termination was in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*. Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's claim because the constitutional ministerial exception assertedly precludes this Court from

exercising subject matter jurisdiction over claims involving the employment relationship between a religious organization and its ministerial employees. Plaintiff contends that Defendant has waived its right to assert the ministerial exception as a defense to a claim of discrimination under the ADA.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of [subject matter] jurisdiction on its face ... or it can attack the factual basis for jurisdiction ...." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir. 2004).

In the instant case, the Court finds that Defendant attacks the factual basis for jurisdiction - in particular, whether the relevant facts support Defendant's contention that this Court lacks subject matter jurisdiction due to the constitutional ministerial exception. When a Rule 12(b)(1) motion attacks the factual basis for subject matter jurisdiction, "the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, 381 F.3d at 516 (citing, *inter alia*, RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1133-35 (6th Cir. 1996)). In reviewing a Rule 12(b)(1) motion challenging the factual basis for jurisdiction, "a trial court has wide discretion to allow affidavits, documents and even

a limited evidentiary hearing to resolve disputed jurisdictional facts." Ohio Nat. Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). If a court determines that it lacks subject matter jurisdiction, "the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).

In the instant case, both parties have attached exhibits to their submissions, including declarations and other documents relevant to the disposition of Defendant's motion. The Court, utilizing its discretion to allow the presentation of such materials, has reviewed those materials submitted by the parties in support of their respective contentions. The Court finds that, because the resolution of Defendant's motion turns chiefly upon the determination of a question of law, neither the submission of additional materials nor a limited evidentiary hearing would aid the Court in the resolution of Defendant's motion.

## II. RELEVANT FACTS

The facts relevant to the disposition of Defendant's motion are not in dispute. Defendant is a non-profit public benefit corporation that was organized in 1925 by the North Arkansas, Mississippi, and Memphis Conferences of the United Methodist Church. According to the Statement of Covenant Relationship Between Methodist Healthcare and the North Arkansas, Mississippi and Memphis Conferences of the United Methodist Church, "[t]he

3

essential mission of Methodist Healthcare is to respond in the spirit of God's love to its patients, physicians, students, Associates (employees) and officials, other institutions and the community." (Def.'s Mot. to Dismiss for Lack of Subj. Matter Jur., Ex. 1.) According to Defendant's Bylaws, Defendant "shall be operated in accordance with the Social Principles of The United Methodist Church." (Id., Ex. 3 at 1.) Defendant's Associate Handbook further states that "Methodist Le Bonheur Healthcare, in partnership with its medical staffs, will be the leader in providing high quality, cost effective healthcare to benefit the communities we serve. Services will be provided in a manner, which supports the health ministries and Social Principles of The United Methodist Church." (Id., Ex. 4 at 5.) Defendant is associated with the Conferences of the United Methodist Church, which retains some control and powers over Defendant, including the power to approve of the sale of all or a majority of Defendant's assets and the ability to elect nine members of Defendant's board of directors. (Id., Ex. 2 at 3; Ex. 3 at 5.)

In August of 2002, Plaintiff was admitted into Defendant's CPE Residency Program as a Resident Level II. (Pl.'s Compl. ¶ 7.) The CPE program is a form of theological education that involves academic study and clinical education in settings where

4

ministry is practiced. The job description for a CPE Resident Level II is as follows:

> The Student is responsible for providing pastoral care and/or counseling to the age specific populations including neonate, pediatric, adolescent, adult and geriatric patients, family members, Associates, Medical Staff and visitors associated with Methodist Hospitals of Memphis. The Student provides spiritual care by seeking to understand the relationship between faith, illness, and the feelings and thoughts that motivate healthy and meaningful use of each person's beliefs and attitudes. In keeping with this primary purpose, the Student is expected to interpret the function of his/her role to other hospital personnel by word and action, to utilize available community resources for the extension of this ministry, and to be an educational and consultative resource to Methodist Hospital of Memphis, Methodist Health Systems and the broader Mid-South Community.

(Def.'s Mot. to Dismiss for Lack of Subj. Matter J., Exs. 7, 8.) CPE residents are required to initiate pastoral visits with patients and family members, (Id., Ex. 10), to be an on-call primary chaplain during non-work hours for all Methodist health care hospitals in the Memphis area (Id., Exs. 9, 10), and to lead a Sunday worship service for patients, family and staff. (Id.)

As a term and condition of employment as a Resident II, all residents are required to submit a report to their CPE Group and its supervisor describing a dream they have experienced. (Id., Ex. 10.) According to Plaintiff, on or about May 16, 2003, Plaintiff submitted her dream report to Dr. William R. Walker and her CPE Group. On or about May 17, 2003, Dr. Walker prepared a professional assessment of Ms. Hollins' dream which expressed

5

concerns about Plaintiff's mental health and recommended that she be referred for a psychiatric evaluation and possible treatment. On or about June 28, 2003, Plaintiff was discharged from her position as a Resident II in the CPE program because she was, according to Plaintiff, perceived as being a threat of harm to Defendant's workplace.[1]

Defendant is accredited by the Association of Clinical Pastoral Education, Inc. (the "ACPE"), as operating an ACPE accredited training center. (Pl.'s Resp. to Def.'s Rule 12(b)(1) Mot. to Dismiss and Mot. to Stay, Ex. 1.) The ACPE is recognized as a qualified accrediting agency in the field of clinical pastoral education by the United States Secretary of Education. (Id., Exs. 2, 3.) Institutions such as Defendant become eligible for federal funds by virtue of being accredited by such an organization. (Id., Ex. 4.)

The ACPE publishes standards for the conduct of its members. It also requires members to sign an "Accountability For Ethical Conduct Policy Report Form" and to provide notice to the ACPE Executive Director of any complaint of unethical or felonious conduct made against them in a civil, criminal, ecclesiastical, employment, or other professional forum. (Id., Ex. 5 at 2.)

---

[1] Defendant maintains that Plaintiff was dismissed because she was not a suitable candidate for the CPE program. (Def.'s Mot. to Dismiss for Lack of Subj. Matter Jur., Ex. 12 (Dec. of Renee DeRossitt), ¶ 3.) Any dispute as to that fact, however, is not material to the Court's resolution of Defendant's motion.

6

ACPE Standard 101 states, in relevant part, "[i]n relationship to those served, ACPE members ... do not discriminate against anyone because of race, gender, age, faith group, national origin, sexual orientation, or disability." (Id., Ex. 5 at 3.) Further, ACPE Standard 304 states that members shall "provide all policies and procedures in writing and inform all students and ACPE program staff of their content. These include, but are not limited to ... an admission policy that clearly states the ACPE accredited center does not discriminate against persons because of race, gender, age, faith group, national origin, sexual discrimination, or disability ...." (Id., Ex. 6 at 6.)

On October 7, 2004, Plaintiff filed the instant Complaint alleging that Defendant violated the ADA by requiring her to submit to an unlawful medical examination performed by a staff psychologist who thereafter prepared a professional assessment of her mental health for Defendant's review, and terminating her because it regarded her as having a mental disability.

### III. ANALYSIS

Defendant moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction because the constitutional ministerial exception assertedly precludes this Court from exercising subject matter jurisdiction over claims involving the employment relationship between a religious organization and its

7

ministerial employees. Plaintiff contends that Defendant has waived its right to assert the ministerial exception by seeking and obtaining accreditation from the ACPE, whereby it represented that it did not discriminate against anyone due to, *inter alia*, disability. Alternatively, Plaintiff moves the Court to stay its ruling on Defendant's motion to allow her to conduct limited discovery related to the relationship between Defendant and the ACPE.

The constitutional ministerial exception is rooted in the First Amendment's guarantee of religious freedom and generally bars civil courts from reviewing decisions of religious organizations relating to the employment of their ministers. <u>Lewis v. Seventh Day Adventists</u>, 978 F.2d 940, 942-43 (6th Cir. 1992); <u>see also</u> <u>Hutchinson v. Thomas</u>, 789 F.2d 392, 396 (6th Cir. 1986)(affirming dismissal of claim for lack of subject matter jurisdiction where minister alleged that church misapplied provisions of church law and forced him into retirement). A civil court generally lacks subject matter jurisdiction over a claim relating to the employment of a religious minister even when a plaintiff alleges that the religious organization's decision was based upon a misapplication of its own procedures and laws. <u>Id.</u>

The focus of the ministerial exception is on the action taken by the employer, rather than the motivation for that

8

action. Petruska v. Gannon Univ., 350 F.Supp.2d 666, 677 (W.D.Pa. 2004)(citing E.E.O.C. v. Catholic Univ. of America, 83 F.3d 455, 465 (D.C. Cir. 1996)). Accordingly, "[t]he exception precludes any inquiry whatsoever into the reasons behind a church's ministerial employment decision." EEOC v. Roman Catholic Diocese of Raleigh, N.C., 213 F.3d 795, 801 (4th Cir. 2000). Numerous Circuit Courts of Appeal have noted the importance of the ministerial exception to religious institutions' right to freely exercise their faith. See, e.g., Bollard v. California Province of the Society of Jesus, 196 F.3d 940, 946 (9th Cir. 1999)("[T]he ministerial relationship lies so close to the heart of the church that it would offend the Free Exercise Clause simply to require the church to articulate a religious justification for its personnel decision."); Rayburn v. General Conference of Seventh Day Adventists, 772 F.2d 1164, 1169 (4th Cir. 1985)("In these sensitive areas, the state may no more require a minimum basis in doctrinal reasoning than it may supervise doctrinal content.").

In her response to Defendant's motion, Plaintiff does not dispute whether she should be considered a ministerial employee or that the ministerial exception generally applies to Defendant;[2] rather, Plaintiff only contends that Defendant has

---

[2] Plaintiff's concession notwithstanding, the Court finds based upon the record that Plaintiff was a ministerial employee and that Defendant may properly invoke the ministerial exception.

9

waived its right to assert the ministerial exception by seeking and obtaining accreditation from the ACPE, whereby it represented that it did not discriminate against anyone due to, *inter alia*, disability.

"[I]t is well established that courts closely scrutinize waivers of constitutional rights, and 'indulge every reasonable presumption against a waiver.'" Sambo's Restaurants, Inc. v. City of Ann Arbor, 663 F.2d 686, 690 (6th Cir. 1981)(citing Aetna Ins. Co. v. Kennedy, 301 U.S. 389 (1937); Brewer v. Williams, 430 U.S. 387, 404 (1977)). "In the First Amendment context the evidence must be 'clear and compelling' that such rights were waived." Id. (citing Curtis Publishing Co. v. Butts, 388 U.S. 130, 145 (1967); National Polymer Products v. Borg-Warner, 641 F.2d 418 (6th Cir. 1981)). Moreover, as Plaintiff concedes (See Pl.'s Resp. to Def.'s Rule 12(b)(1) Mot. to Dismiss and Mot. to Stay at 6), a waiver of constitutional rights must be knowing and voluntary. See K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir. 1985)(finding waiver of constitutional right to jury trial must be knowing and voluntary).[3]

---

[3] Some ambiguity exists as to the standard to apply regarding the purported waiver of constitutional rights applicable in civil litigation as opposed to those rights necessary to preserve a fair trial in a criminal case. See K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 755-56 (6th Cir. 1985). However, there is no persuasive authority that a lesser standard than a knowing, voluntary waiver proved by clear and convincing evidence would apply to the asserted waiver by Defendant of the ministerial exception.

10

In light of the presumption against waivers of constitutional rights, the Court finds that Defendant did not knowingly or voluntarily waive its constitutional right to be free from judicial interference with the selection of its ministers by seeking and obtaining ACPE accreditation. Plaintiff points to no indication that Defendant knew or intended to waive such rights by obtaining ACPE accreditation. Although Defendant's alleged failure to adhere to the ACPE nondiscrimination clauses might have some effect upon its accreditation by that agency, merely signing such an agreement does not, in and of itself, indicate a knowing, voluntary waiver of Defendant's constitutional right to be free from judicial interference with decisions relating to the employment of its ministers. See, e.g. Petruska, 350 F.Supp. 2d at 667 (finding university did not waive right to invoke ministerial exception through representations that it was an equal opportunity employer that did not discriminate against students).

In the alternative, Plaintiff moves to stay the Court's ruling on Defendant's motion "until such time that Plaintiff is allowed to supplement this response following a reasonable period of discovery limited to the relationship between Defendant and the Association for Clinical Pastoral Education, Inc., its adherence to the Association's Standards and Accreditation manuals and its receipt of Federal funds from the U.S. Department

of Education as an accredited CPE Center." (Pl.'s Resp. to Def.'s Rule 12(b)(1) Motion to Dismiss and Pl.'s Mot. to Stay at 1-2.) As noted, however, signing the nondiscrimination clause in order to receive ACPE accreditation does not indicate a waiver of Defendant's constitutional right to be free from judicial interference with respect to decisions relating to the employment of its ministers. Further discovery regarding this issue would not alter the Court's determination. Defendant's motion to dismiss Plaintiff's claim for lack of subject matter jurisdiction is therefore GRANTED and Plaintiff's claim is DISMISSED.

## IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED and Plaintiff's claim is DISMISSED.

So ORDERED this 21 day of July, 2005.

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 14 in case 2:04-CV-02805 was distributed by fax, mail, or direct printing on July 22, 2005 to the parties listed.

---

David P. Jaqua
BUTLER SNOW O'MARA STEVENS & CANADA, PLLC
6075 Poplar Ave.
Ste. 500
Memphis, TN 38119

Joseph M. Crout
BOWLING & BOWLING
7936 Players Forest Dr.
Memphis, TN 38119

W. Kerby Bowling
BOWLING & BOWLING
7936 Players Forest Dr.
Memphis, TN 38119

Honorable Jon McCalla
US DISTRICT COURT